

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed February 4, 2025

United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| SU C. CHOI, | § § | CASE NO. 24-31038-SGJ-7 (Chapter 7) |
| Debtor. | § | |

___

| | | |
|---|---|---|
| NAM LEE | § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary No. 24-03047-sgj |
| SU C. CHOI, | § § | |
| Defendant. | § § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF A JUDGMENT THAT DEBT SHOULD NOT BE EXCEPTED FROM DISCHARGE UNDER SECTION 523(a)(2)(A)

### I. INTRODUCTION

Before this court is an Adversary Complaint Objecting to the Dischargeability of a Debt, pursuant to 11 U.S.C. § 523(a)(2)(A) (the "Complaint"). The Complaint is brought by a creditor, Nam Lee (the "Plaintiff" or "Ms. Lee"), and an Answer (the "Answer") was filed by the Chapter

7 Debtor, Su Choi[1] (the "Defendant" or "Ms. Choi"). The court held a trial on this matter on January 22, 2025. The court has determined that no judgment of nondischargeability is warranted here. Notably, there was a dearth of evidence regarding the underlying debt. A creditor ultimately bears the burden of proof in any section 523 action. Thus, the Plaintiff must lose here. While there was sufficient evidence of a debt, there was insufficient evidence of alleged misrepresentations, made with requisite intent, and justifiable reliance upon same. This constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Where appropriate, a finding of fact should be construed as a conclusion of law and vice versa.

## II. FINDINGS OF FACT

The adversary proceeding, sadly, involves a dispute between two former friends. It is undisputed that the Plaintiff, Ms. Lee, who is 86 years old, loaned her former friend Ms. Choi significant sums of money from time to time. The lending arrangement was very informal. Both Plaintiff and Defendant testified at trial that the lending was effectuated with cash only—even though the loans were for thousands of dollars. There were no checks or wires from Ms. Lee—just cash handed over to Ms. Choi. No receipts were given.[2] Periodically, notes would be created (by an attorney for Ms. Lee) and signed by the parties to memorialize the informal lending.[3] Both parties agree that loans in the aggregate sum of $254,400 were made by Ms. Lee to Ms. Choi between 2015 and 2018. Ms. Lee testified that these loans were intended to help Ms. Choi fund

---

[1] The Complaint and other filings of the Plaintiff have used the name Sui Choi for the Defendant, but this appears to be a typographical error, and the correct spelling of the Defendant's name is Su Choi.
[2] Ms. Choi testified that she would sometimes give undated checks over to Ms. Lee, for future dating and deposit. There was not a very clear explanation for this provided at trial. *See* Pl. Exhs. 5A-5D. Ms. Choi testified that whenever she borrowed money, she wrote Ms. Lee checks that "were evidence" that Ms. Lee loaned her the money. The four checks submitted into evidence add up to $180,000. There was not evidence that these checks were ever presented for payment or, frankly, what was done with them.
[3] Pl. Exhs. 1, 2, and 3.

her business, the Nollowa Bar and Grill, which Ms. Choi purchased in December 2015. Ms. Choi disputes that this was agreed to as part of the lending—although she did testify that she used $60,000 of the money Ms. Lee loaned her to buy the bar and grill (which she purchased for $100,000). The bar and grill ceased operating in November 2019 due to low revenue.[4] The documentary record here is lean. Most of the evidence before the court was simply oral testimony, with the only two witnesses being Ms. Lee and Ms. Choi. Both Plaintiff and Defendant have limited proficiency with the English language and testified through a Korean language interpreter. Both seemed generally credible. They just seem to have very different memories of what was or was not said or intended between them.

The first loans (initially $80,000 and then $20,000, according to Ms. Lee's testimony) were memorialized *after-the-fact* by a promissory note, dated July 1, 2015, in the amount of $100,000, "with interest at a rate of zero percent (0%) per annum," payable to Ms. Lee in 24 monthly installments of $2,083.33, until paid in full ("Note 1").[5] To be clear, Note 1 was signed by both Plaintiff and Defendant on July 1, 2015, but Ms. Lee testified she gave Ms. Choi the cash (i.e., the loan proceeds) *before* that. There is no reference in Note 1 to a security agreement. However, a UCC financing statement was admitted into evidence, showing it was filed by a lawyer for Ms. Lee on December 29, 2015, which indicated that Ms. Lee had a lien on "any and all equipments, [sic] inventory, fixtures and furnitures [sic] of the business known as Nollowa Bar & Grill located at 2560 Royal Lane, #102, Dallas, TX 75229."[6] No security agreement was ever executed. The second loan (or set of loans, really) was/were memorialized by a promissory note dated April 1, 2018, in the amount of $240,000, "with interest at a rate of zero percent (0%) per annum," payable

---

[4] Notably, Ms. Lee later testified that when she gave Ms. Choi the loans, she did not know exactly what the money was going to be used for. Ms. Lee stated that she felt she had been cheated by Ms. Choi.
[5] Pl. Exh. 1. The court notes that these payments would not add up to anywhere close to $100,000.
[6] Pl. Exh. 4.

to Ms. Lee in 12 monthly installments of $20,000 each, with the 12th installment being payable on or before April 1, 2021 ("Note 2").[7] Ms. Lee testified that Note 2 was intended to modify Note 1, to include total amounts lent to Ms. Choi at this point in time, because Ms. Lee had lent still more significant amounts of cash over time. Once again, there was no reference in Note 2 to a security agreement. Finally, there is a third promissory note dated April 1, 2018 (the same date as Note 2), but signed on August 3, 2018, in the amount of $254,400, "with interest at a rate of zero percent (0%) per annum," payable to Ms. Lee in monthly installments of $5,300, beginning on September 1, 2018, and payable until paid in full ("Note 3").[8] There was inconsistent, unclear testimony as to why Notes 2 and 3 were dated as of the same date. In any event, the parties agree that, pursuant to the second and third notes, Ms. Choi agreed not only to pay for the additional amounts funded to her over time, but also reaffirmed her obligation to pay the debts evidenced by each prior note. Note 1, 2, and 3 are sometimes referred to herein as the "Notes."

Ms. Lee eventually made a demand for payment on Ms. Choi through a lawyer, then filed suit and obtained a default judgment against Ms. Choi on July 13, 2022 in a Dallas County court ("State Court") in the amount of $254,400, plus $4,000 of attorney's fees and other accruals.[9] Ms. Choi does not dispute that she owes the liquidated amount of the judgment and, in fact, scheduled Ms. Lee as an unsecured creditor in the amount of $258,400.

The only issue before the court is whether this amount owing to Ms. Lee should be excepted from Ms. Choi's discharge. Ms. Lee testified that there were three misrepresentations or false

---

[7] Pl. Exh. 2.
[8] Pl. Exh. 3.
[9] Pl. Exh. 10. Note that, on February 16, 2022, through counsel, Ms. Lee provided notice and demand to Ms. Choi that she was accelerating the full balance of amounts due based on Ms. Choi's failure to make timely payments of principal and demanded payment of the full balance of $254,400 plus attorney fees. When this demand went unacknowledged, Ms. Lee made an identical demand on March 10, 2022. She then sued Ms. Choi for breach of contract and civil theft liability under TEX. CIV. PRAC. REM. CODE 134.001 and Ms. Choi did not appear in court, resulting in a default judgment being entered against her. *See also* Pl. Exhs. 7-9.

pretenses made to her by Ms. Choi, on which she relied, in connection with the loans. First, Ms. Choi allegedly agreed that she would provide a security agreement to secure the debt to Ms. Lee (providing as collateral the assets at her bar and grill), but no security agreement was ever provided. Second, Ms. Choi later, allegedly, represented that she was going to obtain a line of credit for $250,000 to pay back the debt to Ms. Lee, and this was part of the reason Ms. Lee loaned Ms. Choi more money (or extended earlier loans). Finally, and more generally, Ms. Lee testified that Ms. Choi represented to her that she would be using the loans from her to open and finance her business, Nollowa Bar and Grill. However, Ms. Lee testified that Ms. Choi later told her she actually used the funds for gambling, to buy a Lexus SUV, a diamond ring, a Rolex, and equipment for her nail or skin salon.

Ms. Choi disputes saying or doing these things. She admits going to gamble at a casino with Ms. Lee from time to time. Ms. Choi also admits to buying a Lexus in March 2016 with a $5,000 down payment but says she did not use Ms. Lee's loan proceeds for that. She denies using the loan proceeds for buying luxury items or ever telling Ms. Lee that she did. She denies ever having applied for a line of credit or saying that she would. On the topic of agreeing to provide a security agreement, Ms. Choi testified that she did not know what a security agreement was. She could not read English very well and she just signed whatever Ms. Lee and her lawyer put in front of her. She says she never paid the principal on the Notes but paid interest to Ms. Lee from time to time (sometimes $5,000 and sometimes $10,000) even though no interest was set forth in the Notes. She has no receipt for these payments. She testified that Ms. Lee would write it down in a notepad whenever she paid her something (a notepad was not introduced into evidence or confirmed by Ms. Lee; Ms. Lee did, however, testify that Ms. Choi paid her a couple of thousand dollars a few times).

Sadly, as noted earlier, there is not much documentation as evidence in this dispute. It is mostly two witnesses who have different versions of what was said, what might have been promised, and what happened to the loan proceeds. Both Ms. Lee and Ms. Choi seemed generally credible. There is just a lack of documentation to corroborate the different oral versions of what exactly transpired.

### III. CONCLUSIONS OF LAW

This court has subject matter jurisdiction in this adversary proceeding, pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A) and (I). Thus, the bankruptcy court has statutory authority to enter a final judgment. Moreover, the court has determined that it has constitutional authority to enter a final judgment in this matter. Venue is proper before this court, pursuant to 28 U.S.C. §§ 1408 and 1409.

Plaintiff bears the burden of proving, by a preponderance of the evidence, that her debt should not be discharged under 11 U.S.C. § 523(a).[10] To meet this burden, the court must determine, based on the evidence, that it is more likely than not that a fact is true.[11]

The court concludes that Plaintiff has not met her burden of proof to establish that "false representations" or an "actual fraud" was committed by Defendant (on which Plaintiff might have justifiably relied) so as to give rise to a nondischargeable debt here.

Section 523(a)(2)(A) was designed to protect victims of fraud, as opposed to protecting debtors.[12] The Bankruptcy Code "affords relief only to the 'honest but unfortunate debtor,' and an individual may not obtain a discharge of debts incurred through his own wrongful conduct."[13] Yet,

---

[10] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).
[11] *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 736 (Bankr. S.D. Tex. 2017) (quoting *Bale v. Ryan (In Re Ryan)*, 443 B.R. 395, 408 (Bankr. N.D. Tex. 2010).
[12] *Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 319 (5th Cir. 2005).
[13] *Trustmark Nat'l Bank v. Tegeler (In re Tegeler)*, 586 B.R. 598, 635 (Bankr. S.D. Tex. 2018) (quoting *Grogan*, 498 U.S. at 286).

even in the section 523(a)(2)(A) context, "[e]xceptions to discharge are strictly construed against the creditor and liberally construed in favor of the debtor."[14]

Section 523(a)(2)(A) of the Bankruptcy Code states:

(a) A discharge under § 727… of this title does not discharge **an individual debtor from any debt** –
(2) for **money**, property, services, or an **extension**, **renewal**, or refinancing of credit, to the extent obtained by –
(A) false pretenses, **a false representation**, or **actual fraud**, other than a statement respecting the debtor's or an insider's financial condition."[15]

In the case at bar, Plaintiff has argued that Defendant made "false representations" to Plaintiff when she: (a) represented that she would sign a security agreement to secure the loans with her bar and grill assets, (b) then later stated she would obtain a line of credit to repay the debt when the business faltered, and, more generally, (c) represented that she would use loan proceeds in connection with Nollowa Bar and Grill and, instead, allegedly utilized them for luxury items and other uses. Before analyzing section 523(a)(2)(A) to determine whether it applies, the court must first determine whether a debt is owed. After determining if a debt exists, the court can then examine whether such debt is nondischargeable under section 523(a)(2)(A).

**A. A Debt is Owed by Ms. Choi to Ms. Lee.**

It is undisputed by the parties that Ms. Lee made several advancements of cash totaling $254,400 to Ms. Choi from July 2015 to August 2018, in return for which Ms. Choi agreed to make installment payments in varying amounts under three promissory notes payable to Ms. Lee. There are three promissory notes, signed by Ms. Choi, which are discussed in greater detail above. A

---

[14] *FNFS, Ltd. V. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)).
[15] 11 U.S.C. § 523(a)(2)(A) (2018).

7

default judgment was entered against Ms. Choi. Ms. Choi listed Ms. Lee's debt in her bankruptcy schedules in the amount of $258,400. The court concludes that Ms. Choi is liable for the debt owed to Ms. Lee.

### B. The Debt Owed by the Debtor is Not Nondischargeable.

Having now concluded that Ms. Choi is personally liable to Plaintiff for the debt set forth above, the court must now determine whether such debt is nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code.

In order to prove that a debt is nondischargeable, due to a debtor obtaining a debt or a renewal through "*a false representation*," pursuant to section 523(a)(2)(A), a creditor must show that: (1) the debtor made representations other than a statement concerning his financial condition, (2) at the time the debtor made the representations, he knew they were false, (3) the debtor made the representations with the intention and purpose to deceive the creditor, (4) the creditor justifiably relied on such representations, and (5) the creditor sustained losses as a proximate result of the false representations.[16] False representations need not be overt; a debtor's silence or concealment of facts can constitute fraudulent misrepresentation.[17] However, "[d]ebts falling within the gambit of § 523(a)(2)(A) are those obtained by fraud 'involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.'"[18] The required intent to deceive may be inferred from a debtor's "reckless disregard for the truth or falsity of the statement combined with the sheer magnitude of the resultant misrepresentation."[19] The intent sufficient to

---

[16] *In re Acosta,* 406 F.3d 367, 372 (5th Cir. 2005); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).
[17] *AT&T Universal Card Servs. V. Mercer (In re Mercer)*, 246 F.3d 391, 404 (5th Cir. 2001).
[18] *Provident Bank v. Merrick (In re Merrick)*, 347 B.R. 182, 186 (Bankr. M.D. La. 2006) (citing *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992)).
[19] *Acosta*, 406 F.3d at 372.

preclude discharge may also be "inferred where the debtor makes a false representation and knows or should know that the statement will induce another to act."[20] Further, "when examining a debtor's intent under section 523(a)(2)(A), the court is required to consider whether the circumstances in the aggregate present a picture of deceptive conduct on the part of the debtor, which betrays an intent on the part of the debtor to deceive his creditors."[21]

In evaluating a cause of action under section 523(a)(2)(A), whether it is a question of false pretenses or of false representation or of actual fraud, the court must determine that the plaintiff – in this case, Ms. Lee – justifiably relied upon the representations made to her by the defendant (Ms. Choi, herein).[22] "A person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'"[23] This is not a "reasonable man" standard.[24] Rather, justification of the reliance "is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct in all cases."[25] Justifiable reliance turns upon the plaintiff's own capacity and knowledge, or the knowledge with which the plaintiff may be fairly charged to have from the facts within his or her observation in light of his or her individual case.[26]

### i. Ms. Choi made oral representations unrelated to her financial condition to Ms. Lee.

---

[20] *Manheim Auto. Fin. Servs., Inc. v. Hurst (In Re Hurst)*, 337 B.R. 125, 133 (Bankr. N.D. Tex. 2005).
[21] *Id.*
[22] *Field v. Mans*, 516 U.S. 59, 61 (1995).
[23] *Id.* at 70 (quoting the Restatement (Second) of Torts (1976)).
[24] *Id.* at 71.
[25] *Id.*
[26] *Id.*

Section 523(a)(2)(A) specifically excludes statements concerning a debtor's financial condition. The main representations Ms. Choi allegedly made to Ms. Lee were (1) that she would sign a security agreement relating to the debt (2) that she would obtain a line of credit to repay the debt and (3) that she intended to use the funds to support her bar and grill. None of these could be considered a statement about financial condition. Because these are alleged representations that are unrelated to the Defendant's overall financial health, the court will further examine the elements of section 523(a)(2)(A)

> ii. **The evidence in the record is not sufficient to demonstrate that Ms. Choi knew her representations were false at the time they were made.**

There is not sufficient evidence to demonstrate that Ms. Choi knew at or around the time of her alleged representations that such representations were false. Ms. Lee and Ms. Choi were the only witnesses to testify, and each had conflicting accounts of what was said or agreed to. However, from the testimony it is clear that neither Ms. Lee nor Ms. Choi fully understood what a security agreement was or the purpose of one. Therefore, any representation by Ms. Choi that she would sign a security agreement was at best uninformed, though it is possible she still had the intention to sign what she believed to be correct paperwork to finalize a loan, even if she did not fully understand the ramifications.

There was little to no evidence from which to infer Ms. Choi's state of mind at the time of the alleged representations. As alluded to above, it is not even clear exactly when many of the alleged representations were made. The parties contest whether Ms. Choi ever represented that she would obtain a line of credit to repay Ms. Lee. In her testimony, Ms. Lee stated that part of the reason she gave or extended her loans to Ms. Choi was because Ms. Choi represented at some point, after the bar and grill business was faltering, that she was going to obtain a line of credit and

would be able to pay Ms. Lee back. As Ms. Choi contests this, it is hard to conclude what her state of mind was at the time of the alleged representation.

As to Ms. Choi's alleged stated intention to use the loan proceeds generally for her bar and grill, it is also unclear if this representation—assuming it was made—was false at the time it was made. Ms. Lee alleges that she was told by Defendant that the proceeds of the loan were used to buy a diamond ring, a Lexus SUV, a Rolex watch, and equipment for a salon; however, Defendant contests this testimony. She concedes that she did buy a Lexus in March of 2016 but said she did not use the loan money to purchase the car. She also denies ever telling Ms. Lee that she used the money to buy any of the other things Ms. Lee alleges. There is no documentation in the record to show that Ms. Choi even owns a diamond ring or a Rolex watch, and nothing other than conflicting testimony regarding the Lexus and what funds were used to purchase it. Because the record is severely lacking in evidence, because the evidence that is in the record is conflicting, and because the burden of proof lies with the Plaintiff, the court cannot find that Ms. Choi knew her statements were false at the time she made them. Though the failure to meet this prong of the test is enough to end the inquiry, in the interest of fully explaining its decision, the court will examine the remaining prongs.

### iii. *The evidence in the record is not sufficient to show that Ms. Choi made the alleged representations with the intention and purpose to deceive.*

There is insufficient evidence in the record to establish that Ms. Choi acted with the reckless indifference to the truth that is needed to impute an intent to deceive. Ms. Choi and Ms. Lee had a longstanding relationship. Due to Ms. Lee's advanced age and her close friendship with Ms. Choi, it is reasonable to assume that Ms. Choi knew or should have known that, based upon this close relationship, Ms. Lee would rely on any representations that Ms. Choi made to Ms. Lee.

It is likely, based on the credible oral testimony, that Ms. Choi assumed Ms. Lee would lend her money upon being asked. However, there was no evidence provided to show that Ms. Choi had intentions to deceive Ms. Lee in order to obtain this money. Nor was there evidence that she acted with any reckless indifference.

As to the security agreement, as discussed above, both Ms. Lee and Ms. Choi testified that they were not familiar with security agreements and were signing paperwork that they thought to be sufficient to establish the loans between them. Because Ms. Choi was unfamiliar with the concept of a security agreement it is unlikely that she acted intentionally to deceive Ms. Lee as to any representation that she would sign a security agreement had one been presented to her.

As to the line of credit, because Ms. Choi disputes having made that representation to Ms. Lee, it is difficult to determine whether she actually made the statement at all, much less whether she made it with intention to deceive the Plaintiff.

The representation about the intended use of the loans is equally difficult to analyze. Because it is unclear when the representations might have been made, it is hard to decipher Ms. Choi's intentions in supposedly making the representations. Ms. Choi testified that her bar and grill was successful for three years before falling on hard times. Note 1 was signed in July 2015, five months before the bar and grill opened. If Ms. Choi made representations at this time that she was going to use the money for her bar and grill, it is reasonable to believe that she would expect the business to succeed and would not yet have known about the hard times it would later encounter. There is no evidence in the record to show exactly when the representation was made, if it was made at all, and if Ms. Choi actually did use a portion of the loan to support her growing business. As discussed above, though Ms. Lee asserts that Ms. Choi used the money for other

things, this testimony is disputed by Ms. Choi and there is nothing in the record that would allow the court to support one party over the other on this issue.

The record does not have enough evidence to prove that Ms. Choi even made all of the alleged representations to Ms. Lee. It certainly does not have the evidence to prove that she made these statements with intent to deceive.

### iv. *Ms. Lee's reliance was not justifiable.*

To the extent that Ms. Lee relied on Ms. Choi's alleged misrepresentations, Ms. Lee's reliance was not justifiable under the circumstances. The court has certainly taken into account Ms. Lee's status and circumstances. Ms. Lee is an 86-year-old woman who attests that she has no husband, and no children, and enjoyed being invited out and spending time with Ms. Choi. Despite this potential vulnerability and trust that Ms. Lee had in Ms. Choi, she simply did not meet the burden of proof needed to show that she justifiably relied on Ms. Choi's misrepresentations when loaning her the $254,400. Bearing Ms. Lee's condition in mind, the court must examine the specific facts readily ascertainable by Ms. Lee at the time the loans were made.

There is no documentation before the court to prove exactly if or when Ms. Choi represented to Ms. Lee that she would sign a security agreement, or to prove if or when she represented that she would obtain a line of credit to pay back the debt.

Ostensibly, the representation regarding the line of credit was made after the loan, as the representation referred to a debt that had already been incurred. Therefore, Ms. Lee could not have relied on Ms. Choi's representation about the line of credit when making her initial loan.

Ms. Choi testified that Nollowa Bar and Grill opened in December 2015. While Note 1 was dated July 2015, Notes 2 and 3 were signed in 2018, well after the bar and grill had opened.

Plaintiff, through her lawyer, argued that Defendant made a false representation when she said she was going to use the proceeds for the bar and grill. Plaintiff testified that Defendant later told her that she used a portion of the loans to buy a diamond ring, a Lexus SUV, a Rolex, and equipment for her nail or skin salon. Though the Defendant may have misrepresented her intentions to the Plaintiff, because the timing and exact circumstances are unclear, there is nothing in the record to support a finding that Plaintiff relied on this misrepresentation.

In summary, there is not sufficient testimony or documentation to prove exactly when the money was loaned, and what information Plaintiff had at the time she loaned the money. It is unclear when certain representations were made and if they had an impact on Plaintiff's decision to loan Defendant money. Because the timing and circumstances are unclear, the court cannot confidently conclude that Plaintiff justifiably relied on any potential misrepresentations of Defendant when making the loans.

> v. *Ms. Lee did not sustain a loss as a proximate result of Ms. Choi's misrepresentations.*

Both parties agree that Ms. Choi owes Ms. Lee $254,400 for cash loans. Parties agree that these loans were made and have not been repaid in full. Though the court acknowledges that Ms. Lee has suffered a loss, as a result of the lack of repayment, the court simply cannot conclude from the evidence that Ms. Choi made a misrepresentation. Therefore, there is not sufficient evidence to prove a causal link to connect any statements made by the Defendant and the loss incurred by the Plaintiff.

In summary, based on the scant evidence presented, the court ultimately concludes that the debt owed to Plaintiff does not fit under false representations, false pretenses, or actual fraud so as

to be deemed nondischargeable pursuant to section 523(a)(2)(A). Any other relief sought in this adversary proceeding that is not otherwise addressed herein is denied.

A separate judgment shall be submitted by Su Choi that is consistent with these Findings and Conclusions.

### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###